IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO FACEBOOK ACCOUNTS AND FOUR INSTAGRAM ACCOUNTS, STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Magistrate No. 20-MJ-1529 <br><br> **FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Bridgette E. Jenkins, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with two Facebook accounts and four Instagram accounts (the "**Subject Accounts**"), that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company with headquarters in Menlo Park, California. [1] The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with each user ID further described in Attachment A.  Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described in Attachment B.

---

[1] Facebook is the corporate entity that provides the Instagram service.  Accordingly, Facebook has informed law enforcement that requests for Instagram user data must be addressed to Facebook, Inc.

2.     The Subject Accounts are as follows:

## FACEBOOK

- Display Name: Syfiece Hawkins (partyboyrock), User Name: iamdjparty, UID: 100001998881441
- Display Name: Khalif Miller (Leaf Buckk), User Name: Khalif Miller, UID: 100000910514870

## INSTAGRAM

- Display Name: DJ: @PARTYBOYROCK, User Name: partyboyrock, UID: 214848393
- Display Name: Ant Smith, User Name: Onevillageant, UID 3922142044
- Display Name: Moe Witcher, UID: 3626077996
- Display Name: Leaf Buckk, User Name: leafbuckk21

3.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Philadelphia Division.  I have been a Special Agent with the FBI since 2018.  I am currently assigned to the Philadelphia Field Division, South Jersey Resident Agency Joint Terrorism Task Force (JTTF), which investigates violations of Federal law, to include domestic terrorism matters.  Specifically, I have investigated persons who advanced violent rhetoric and action in furtherance of same.  Often, these investigations are intertwined with criminal acts, such as vandalism, arson, desecration, and other dangerous destructive acts.  As part of my employment with FBI, I have successfully completed numerous traditional classroom and computer-based trainings in various areas, including those in international and domestic terrorism.  I have also completed several investigative technology courses, including Social Media Fundamentals, Exploiting Mobile Communications, and Open Source Fundamentals.  I have participated in numerous search and seizure warrants for various federal offenses, and I have participated in the arrest of numerous individuals who have violated federal laws of the United States.  These arrests and search and seizure warrant executions have resulted in the seizure of computers, telephones, laptops, tablets and servers.

4.    The facts set forth in this affidavit are based on my personal knowledge, the knowledge obtained during my participation in this investigation, the knowledge obtained from other individuals, including other law enforcement personnel, review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that individuals known and unknown have committed violations of Title 18, United States Code, Section 844(f)(1) and (2) (knowing, intentional, and malicious damage and destruction, and attempt, by means of fire, a vehicle, creating substantial risk of injury), and Title 18, United States Code, Section 2 (aiding and abetting).  There also is probable cause to search the information described in Attachment A for evidence, contraband, fruits, and/or instrumentalities of the Subject Offenses, further described in Attachment B.

## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *Id.* §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## THE SERVICE PROVIDERS

7.    Based on my training and experience, I have learned the following information

about Facebook and Instagram:

      a.     Facebook and Instagram are social media content-sharing platforms. When a user subscribes for a Facebook or Instagram account, Facebook and Instagram request the user to provide registration information such as first and last name, picture, email address, and phone number.

      b.     Facebook and Instagram host user content, including photographs, comments, and communications among Facebook and Instagram users.  This includes the ability to send private messages among Facebook and Instagram accounts and the ability to create and join group conversations.

      c.     Facebook and Instagram send its users service-related emails, relating to account verification, changes and updates to user features, and technical and security notices.

      d.     Facebook and Instagram use third-party analytics tools to measure traffic and usage trends.  These tools collect information sent by users' devices, including the web pages that the users visit, add-ons, and other information.

      e.     Facebook and Instagram use cookies and similar technologies like pixels, web beacons, and local storage to collect information about its users.

      f.     Facebook and Instagram maintain log files, which track their users' requests to access a web page or application, and web requests, IP addresses, browser type, referring/exit pages, URLs that the user interacted with, domain names, landing pages, pages viewed, and other information.

      g.     Facebook and Instagram also collect and maintain data about its users' mobile telephones and devices, including "device identifier" information.  Device identifiers are small data files or similar data structures stored on the device itself.  Facebook and Instagram

also contain metadata, or technical data, with users' content.  This data can describe how, when, and by whom a piece of User Content was collected and how that content is formatted.  Users can add or may have metadata added to their user content including a hashtag, comments, or other data.

       h.     Facebook and Instagram allow users to tag videos and photographs that are posted by Facebook and Instagram users with hashtags and stores other metadata, including geolocation information and EXIF (metadata) information.

       i.     Internet service providers like Facebook and Instagram may also maintain records of the searches conducted within Instagram.

       8.     In my training and experience, evidence of who was using an account, and from where, and evidence related to criminal activity of the kind described below, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  The stored communications and files connected to an account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

       9.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook and Instagram can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-

location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

10.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

11.     Other information connected to a Facebook or Instagram account may lead to the discovery of additional evidence.  For example, messages and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

12.     Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of the services those companies provide.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## PROBABLE CAUSE

### I.     Background of Arson Investigation

13.     On or about May 25, 2020, George Floyd died while in the custody of the Minneapolis, Minnesota, Police Department.  The circumstances surrounding Floyd's death drew national media attention.  In the days following Floyd's death, large-scale protests were held throughout the United States.

14.     One such protest took place on or about Saturday, May 30, 2020, in and around Philadelphia, Pennsylvania.  While the protest earlier in the day was peaceful, violence erupted later in the day.  Among other things, a group of individuals began to riot, smashing store fronts, looting stores, and attacking multiple marked Philadelphia Police Department (PPD) vehicles. These vehicles included one PPD sedan (number C109) near the Municipal Services Building, which was set on fire.  This vehicle was destroyed as a result of being set on fire.  This is how the vehicle appears after the fire:



15.     On that day, at approximately 5:40 p.m., I witnessed a live, aerial news feed from a helicopter that was covering the destruction of the aforementioned PPD vehicles.  At this point of the live coverage, the sedan was engulfed in flames.

16.     Through review of publicly available news outlet and social media photographs, videos, and footage, and general internet research, five individuals were identified as directly involved in, or in the area of, the arson of the PPD vehicle described above.  These individuals were initially referred to as unidentified subjects ("UNSUB") 1, 2, 3, 4, and 5.  Four of the five individuals were observed in available photographs and footage converging on, or assisting with flipping the PPD vehicle on its roof prior to the PPD vehicle being set on fire.

17.     Through investigation, including consulting with other law enforcement officers, all of the UNSUBS have been identified.  UNSUB 1 has been identified as KHALIF MILLER ("MILLER"); UNSUB 2 has been identified as SYFIECE HAWKINS; UNSUB 3 has been identified as CARLOS MATCHETT ("MATCHETT"); UNSUB 4 has been identified as

MOHAMMED MUATH ("MUATH"); and UNSUB 5 has been identified as ANTHONY DAVID ALE SMITH ("SMITH").  How these individuals were identified is discussed below.

18.     In footage available to the government, the individuals believed to be MUATH and SMITH were observed climbing and/or jumping atop PPD vehicle C109 between the time it was flipped, and when it was set on fire.

19.     MILLER and MATCHETT were observed moving toward the PPD vehicle with containers of what appears to be accelerant.  Shortly thereafter, flames and smoke erupted from the PPD vehicle.  Additionally, review of photographs available show that a lighted road flare was placed inside the vehicle.  The investigation continues as to which individual placed the flare inside the vehicle.

20.     MILLER and MATCHETT, along with SMITH, were observed on this footage adding paper and other kindling objects to the fire, causing the fire consuming the PPD vehicle to grow.[2]  MUATH is observed around the car during the time kindling objects are being added to the vehicle.  He is seen hitting the car with what appears to be some sort of metal or wooden rod, and I have reviewed pictures that show MUATH leaning into the car as the fire inside the car burns.  MUATH further appears, in my review of the evidence in this investigation, to be directing acts of destruction during the time frame the vehicle is flipped and set on fire. Accordingly, he is still a subject of this ongoing investigation.

---

[2] Review of photographs and video taken that day is ongoing, and additional individuals aiding and abetting in the arson of this police car may be identified in the future.

21.     MILLER, MATCHETT, MUATH, and SMITH are subjects of this ongoing investigation.  HAWKINS is not currently a subject of the investigation, but for the reasons set forth below, there is probable cause to believe that the social medial accounts utilized by HAWKINS contain evidence of the arson currently under investigation.

## II.     **The Subject Accounts**

### A.   **Identification of Unidentified Subject 2 (HAWKINS)**

22.     UNSUB 2 was identified as SYFICE HAWKINS through review of video and photographs from May 30, 2020, of being near the subject vehicle during the time it was flipped over and set on fire.  The following is a picture of HAWKINS available to the government, along with MILLER (in the blue shirt, closest to the car) and MATCHETT (in all-black with a gray backpack).  HAWKINS is the individual in the middle in the following picture, and is cropped in the second image below for clarity:





23.     On or about June 8, 2020, the FBI received information from a special agent with the Treasury Inspector General for Tax Administration that Instagram user "partyboyrock" was a possible match to UNSUB 2.

24.     A review of photos posted by Instagram user name "partyboyrock" revealed the Instagram poster wearing both the shoes and the bag UNSUB 2 (HAWKINS) was wearing on May 30, 2020.  These Instagram pictures follow:





25.     Furthermore, Facebook user Syfiece Hawkins is seen posing in similar clothing and near a similar car as the Instagram photo posted by Instagram user "partyboyrock" above. Facebook user partyboyrock shows a man with a similar physical build, wearing a similar bag as in Instagram photo posted by Instagram user "partyboyrock" above.





26.     On June 26, 2020, HAWKINS was arrested by Philadelphia Police based on a warrant issued by the Philadelphia Police for HAWKINS regarding looting on May 30, 2020. Upon arrest, and after being advised of his *Miranda* rights, HAWKINS agreed to be interviewed

by Philadelphia Police.  In that interview, HAWKINS admitted to using his phone to take

photographs, record video, and/or live stream to social media websites, a number of arsons and

looting incidents that occurred on May 30, 2020.  Specifically, HAWKINS recalled capturing the

arson of PPD vehicle C109 and stated, "I went on live when the cop car was set on fire."  I know

through my training and experience, that "live" was a reference to "Instagram Live," an option

available through Instagram to live-stream video.  HAWKINS was shown photographs of a man

looting at two locations on May 30, 2020, and HAWKINS confirmed it was him in the

photographs.  HAWKINS was dressed identically when he was observed near PPD car C109.

Moreover, during the PPD arrest and search of HAWKINS, the shirt, hat, shoes, and carrying

bag that UNSUB 2 was wearing at the time of the arson were recovered.  These items match the

items HAWKINS was wearing in the photographs he confirmed showed him on May 30, 2020.

Additionally, I had the opportunity to view the interview of HAWKINS, and confirmed through

my observations of HAWKINS that he is the individual previously identified as UNSUB 2.

27.     Furthermore, on July 31, 2020, Facebook and Instagram provided records

pursuant to court order. Those records indicate that the telephone number used by Instagram user

"partyboyrock" was 267-398-4127. Additionally, the account was used on May 30, 2020 in the

Philadelphia area based on internet log data, and HAWKINS exchanged numerous messages

with numerous Instagram users on that same date. Similarly, those records indicate that the

registered name of the Facebook user "Syfiece Hawkins" is Syfiece Hawkins, and that account

was used on May 30, 2020, to message several other Facebook users.

28.     While HAWKINS is not currently considered a subject of the arson investigation,

HAWKINS's admissions that he used social media during the arson, coupled with Facebook and

Instagram returns, are evidence that HAWKINS's Facebook and Instagram returns very likely contain evidence of the crime under investigation.

29.     Additionally, I know through my training and experience that individuals that have both an Instagram and Facebook account may post different images, stories, or highlights to each account.  I also know that both platforms have messaging capabilities, and that individuals may communicate on one medium with individuals, and not on the other.  Additionally, an individual may use one account or forum for professional or business purposes, and the other for more personal, individualized postings.  As such, I request authorization to search both the aforementioned Instagram and Facebook accounts that are associated with HAWKINS.

**B.   Identification of Unidentified Subject 1 (MILLER)**

30.     On or about June 18, 2020, the FBI obtained security camera footage from Parkway Garage, 150 North Street, Philadelphia, PA, for the date of the arson under investigation, May 30, 2020.

31.     On or about June 23, 2020, the FBI reviewed the footage from May 30, and found UNSUB 1 to enter the 7-Eleven attached to the Parkway Garage.

32.     On June 24, 2020, the FBI obtained and reviewed security camera footage from 7-Eleven for May 30, 2020.  UNSUB 1 is observed to be making a transaction using a credit or debit card.  He appears below, wearing the baseball cap that appears to be blue and white.  This hat matches the appearance of one worn by UNSUB 1 in video and photographs available of the arson under investigation.



33. Pursuant to a grand jury subpoena, 7-Eleven provided sales records for this May 30, 2020 transaction to the government on June 24, 2020.

34. Subpoena returns revealed that the May 30 transaction was associated with a card issued by Bancorp Bank. A grand jury subpoena was subsequently issued to Bancorp Bank. On July 2, 2020, Bancorp Bank provided records that revealed the card used by the man in the baseball cap shown above was issued to KHALIF MILLER.

35. Review of publicly available social media information associated with MILLER yielded a Facebook account (Display Name: Khalif Miller (Leaf Buckk), User Name: Khalif Miller, UID: 100000910514870).

36. A review of photos posted by Facebook user Khalif Miller (Leaf Buckk) revealed multiple tattoos of identical design located in the same places as those observed on UNSUB 1 in footage reviewed of the May 30 arson. Furthermore, Facebook user Khalif Miller appears to be wearing similar glasses to those worn by MILLER/UNSUB 1 on May 30, 2020. The first two of the following pictures are from Facebook user Khalif Miller:





The following images are from video and photographs taken on May 30, 2020 of UNSUB 1, and show both the blue and white baseball cap discussed above, and black-framed glasses that appear to match those worn by in the Facebook photographs shown above:





37.     Publically-available social media account searches also revealed a Instagram user (leafbuckk21) that appears to also be run by MILLER.  For example, this Instagram account

contains several photos in the account's "highlight" section that are also seen on the Khalif Miller (Leaf Buckk) Facebook page.  Additionally, both pages utilize a version of the unique name "Leaf Buckk," and information on the profiles show that the user for both profiles is in the Philadelphia area.

38.     Furthermore, on July 31, 2020, Facebook provided records pursuant to court order for both the Instagram and Facebook accounts associated with MILLER.  Those records indicate that the registered name of the Facebook user "Khalif Miller" is Khalif Miller, using phone number 215-301-4895.  Additionally, the account was used on May 30, 2020 (the day of the arson) to exchange messages with at least two Facebook users.  Similarly, Facebook provided records for Instagram account leafbuckk21 on September 2, 2020.  Those records indicate leafbuckk21 used the account on May 30, 2020 and surrounding dates to upload images and exchange messages with other Instagram users.

39.     Both the Facebook account and Instagram account have limited publicly available postings and, as such, I am unable to access all photos, posts, and other identifying information. Additionally, in my training and experience, it is common for Facebook and Instagram users to create, manage, and maintain more than one account for any number of reasons, including lost passwords, updating information, or even concealment of posts indicating criminal conduct. Accordingly, all these accounts are very likely attributable to the same individual and there is probable cause to believe that these accounts contain information relevant to the investigation, especially in light of their usage on the day of the arson and in subsequent days.

## C.  Identification of Unidentified Subject 3 (MACHETTE)

40.     The individual previously referred to as UNSUB 3, CARLOS MATCHETT, was arrested by Atlantic City New Jersey Police Department ("ACPD") on May 31, 2020 for failure

to disperse during looting in the Atlantic City area.  At the time of MATCHETT's arrest, MATCHETT was searched and was in possession of a hatchet, a folding pocket knife, and a glass jar that contained a liquid that appeared to law enforcement to be gasoline based on its appearance and color.  Subsequent to MATCHETT's arrest, I learned of this arrest and was able to compare visually MATCHETT to the individual from May 30, 2020 previously identified as "UNSUB 3."  Additional evidence of MATCHETT's involvement is discussed below, as the District of New Jersey obtained a search warrant for MATCHETT's Facebook account.

41.    On June 3, 2020, MATCHETT was charged in the District of New Jersey by complaint and warrant on one count of 18 U.S.C. ¶ 2101, inciting a riot, for his activities in Atlantic City on May 31, 2020.  Upon arrest, and after being advised of his *Miranda* rights, MATCHETT agreed to be interviewed by arresting law enforcement officers.  During the interview, MATCHETT admitted he was in Philadelphia, Pennsylvania on May 30, 2020, and posted a live stream to his Facebook page.  Additionally, a red gas can with liquid inside of it was observed inside his residence.  MATCHETT stated that the gas can contained gasoline, and that he used it to start bonfires with wet wood.

42.    Subsequent to MATCHETT's interview, a search warrant was signed by a magistrate judge in the District of New Jersey for MATCHETT's Facebook account, "Carlito Matchett (Carlito's Way)."  Accordingly, I do not seek permission to search any of MATCHETT's social media accounts in this warrant.  However, the results of the search warrant obtained by the District of New Jersey is illustrative of the evidence sought in the application for the accounts discussed above.  For example, examination of MATCHETT's Facebook account revealed numerous posts about rioting and violence: On May 26, 2020, MATCHETT posted a video of himself speaking about the death of George Floyd.  During the video, MATCHETT

encouraged people to use physical force against police and referred to himself as a "vigilante." On May 27, 2020, MATCHETT posted another video, stating: "Yeah bring the chaos. We need more fucking riots. More fucking riots."

43.     Additionally, a review of the search warrant return showed several examples of MATCHETT espousing violence against law enforcement.  For example, on May 31, 2020, MATCHETT made a post in which he stated, "Kill the pigs" above a video showing a group of uniformed officers.  He also posted a picture of an officer dressed in riot gear whose body was on fire with the caption "Finally."  On May 30, 2020, the day of the arson under investigation in this matter, MATCHETT shared an article on his account about a group of peaceful protestors who formed a protective line around a police officer who was separated from other officers in order to defend the officer from rioters.  MATCHETT wrote: "WTF this is bullshit…Kill that piece of pork."  Based on my training and experience, I know the terms "pig" and "pork" are derogatory terms used to refer to law enforcement officers.

44.     On June 2, 2020, MATCHETT had a conversation via Facebook messenger in which MATCHETT states., "I was in philly saturday . . . . we blew up cop cars in philly.. the ones you seen on the news . . . . . I had gasline (sic)."

### D.  Identification of Unidentified Subject 4 (MUATH)

45.     On or about June 18, 2020, the FBI received a tip from Delaware State Police that Instagram user "Moe.Witcher" was a possible match to UNSUB 4.

46.     A publically-available internet search revealed an interview with the user of the "Moe.Witcher" account on October 3, 2019 by Next Up Philly, an online blog which interviews and showcases musical and other artists.  "Moe.Witcher" stated he was born in Jordan and

immigrated to West Detroit in 2001.  In the interview, "Moe.Witcher" stated he was 17 years old

when he moved away from Detroit in 2017.

47.    A review of photos posted by Instagram user "Moe.Witcher" revealed multiple

tattoos of identical design located in the same places as UNSUB 4.  A photo also appeared to

show a similar shirt as the one worn by UNSUB 4 on May 30, 2020.  The two photographs on

the left below are from May 30, 2020.  The three on the right are from the Instagram page of

"Moe.Witcher".



48.     Instagram user "Moe.Witcher's" profile linked the account to Soundcloud, Apple Music, and Spotify profiles.  A review of the Soundcloud account revealed the user resides in Philadelphia, PA and used email address "moewitcher@gmail.com."  This account was also associated with Twitter user "@Moewitcher."  On March 1, 2020, Moewitcher responded to a Tweet indicating his birthday was on ███████.

49.     Law enforcement database queries identified an arrest record for MOHAMMED MUATH, whose arrest photo appeared to be a match to photo of Instagram user "Moe.Witcher." Details of the arrest indicated MUATH was born in Jordan on ███████.

50.     FBI Detroit provided a Michigan driver's license for MUATH which listed him as last residing at 26905 Rochelle Street, Dearborn Heights, MI.  According to a query in Accurint, MUATH currently resides at ███████████.

51.     Furthermore, on August 11, 2020, Instagram provided records pursuant to court order.  Those records indicate that the registered name of the Instagram user "Moe Witcher" is Moe, using phone number 313-265-1280.  The account was used in the Philadelphia area on May 30, 2020 pursuant to internet provider logs and MUATH exchanged numerous messages with other Instagram users, the content of which I cannot review publicly.  Accordingly, there is probable cause to believe that this account contains information relevant to the investigation, especially in light of the usage on the day of the arson in Philadelphia.

## E. Identification of Unidentified Subject 5 (SMITH)

52.     On or about June 17, 2020, the FBI received a tip from the Philadelphia Police Department that they had found possible match to UNSUB 5, ANTHONY DAVID ALE SMITH.

53.     Based upon the tip, FBI databases were queried, and revealed a driver's license photo for SMITH:



54.     Additionally, open source research was conducted, and a possible Instagram account for Smith, with the name appearing as "Ant Smith" (@onevillageant), was found.

55.     Smith posted a photo of a peaceful protest on Instagram on May 31, 2020. In the comment section, SMITH stated, "I'm not posting any of the risky stuff on here. You can use your imagination."  A screen shot of this public post appears below:



56.     In this photo, SMITH appears to be wearing the same glasses in the above Instagram post as he was wearing in the driver's license photo.

57.     On July 1, 2019, approximately 11 months prior to the arson at issue in this investigation, SMITH posted a news article on his Instagram titled, "Several Police Cars Damaged after Hundreds of Teens Gather in North Philadelphia."  In the comment section, SMITH wrote, "if you know anyone that was there inform them to delete the posts and pictures. Avoid hashtags with the word party. Police are monitoring social media to look for vandals." This is how the public post appeared:



58.     Furthermore, on July 31, 2020, Instagram provided records pursuant to court

order. Those records indicate that the registered name of the Instagram user "Ant Smith" is Ant

Smith, using phone number 262-266-8031. The account was used in the Philadelphia area on

May 30, 2020 pursuant to internet provider logs and SMITH exchanged numerous messages with

other Instagram users, the content of which I cannot review publicly.  Accordingly, there is

probable cause to believe that this account contains information relevant to the investigation,

especially in light of the usage on the day of the arson in Philadelphia.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

59.     Based on my training and experience, individuals involved in the crimes under

investigation often use accounts to broadcast, share, post, or otherwise discuss their activity.

Indeed, in this investigation there is specific evidence confirming that the Subjects have used

multiple accounts in just this way, including communicating using and otherwise using platforms

on Instagram and Facebook.  Moreover, and as explained above, the account activity, logs,

stored electronic communications, and other data retained by Facebook and Instagram for each

account can indicate who has used or controlled the account.

60.     With respect to the **Subject Accounts**, I will execute this warrant under the

Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(c)(1)(A), by using the warrant to require Facebook, Inc. to disclose to the government

copies of the records and other information (including the content of communications)

particularly described in Section I of Attachment B.  Upon receipt of the information described

in Section I of Attachment B, government-authorized persons will review that information to

locate the items described in Section II of Attachment B.

61.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  The government will execute this warrant

by serving the warrant on Facebook.  Because the warrant will be served on Facebook, which

will then compile the requested records at a time convenient to it, reasonable cause exists to

permit the execution of the requested warrant at any time in the day or night.

62.     Based on my training and experience, and the training and experience of others

with whom I have consulted, I know the following regarding individuals who engage in criminal

activities, such as arson, attempted arson, and aiding and abetting:

    a.    It is common for these individuals to transmit and store files, documents, and records within their work, personal, or other email accounts for various purposes, including for the purposes enumerated below or for concealment, distribution, use, viewing, storage, or backup copies.  For example, it is common for users of email accounts to retain copies of files and records that are emailed to themselves.

    b.    These individuals often conspire with at least one other person, and that members of such a conspiracy maintain information about the other members of the conspiracy, such as documents, photographs, records, addresses, telephone numbers, and email addresses.

    c.    These individuals often travel in connection with their illegal activities in order to meet with co-conspirators, to transmit information, to receive proceeds of their unlawful activities, to conceal their activities, and to hinder law enforcement efforts to identify and apprehend them.

    d.    These individuals often maintain such records for long periods of time, particularly when they are involved in ongoing criminal conduct, for many reasons.  These persons may no longer realize they still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence.  These persons may be under the mistaken belief that he/she has deleted, hidden, or further destroyed any computer-

related evidence.  These records may also be innocuous at first glance, but have significance when considered in light of other evidence.

## **CONCLUSION**

63.     Based on the forgoing, I request that the Court issue the proposed search warrant for the Subject Accounts.

## **REQUEST FOR SEALING**

64.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____/s Bridgette E. Jenkins_____ _
BRIDGETTE E. JENKINS
Special Agent, FBI

Sworn to and subscribed before me on
this ___15th___ day of September, 2020.

____/s Carol Sandra Moore Wells_ _____
HON. CAROL SANDRA MOORE WELLS
United States Magistrate Judge

## ATTACHMENT A

This warrant applies to information associated with the Facebook and Instagram accounts associated with the following user IDs, that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company located at 1601 Willow Road, Menlo Park, California 94025:

### FACEBOOK

- Display Name: Syfiece Hawkins (partyboyrock), User Name: iamdjparty, UID: 100001998881441
- Display Name: Khalif Miller (Leaf Buckk), User Name: Khalif Miller, UID: 100000910514870

### INSTAGRAM

- Display Name: DJ: @PARTYBOYROCK, User Name: partyboyrock, UID: 214848393
- Display Name: Ant Smith, User Name: Onevillageant, UID 3922142044
- Display Name: Moe Witcher, UID: 3626077996
- Display Name: Leaf Buckk, User Name: leafbuckk21

## ATTACHMENT B

## Particular Things to be Seized

### I.      Information to be disclosed by Facebook, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the information described below to the government for each Instagram account listed in Attachment A:

a.  All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, websites, and other personal identifiers;

b.  All past and current usernames, account passwords, names and telephone numbers associated with the account;

c.  The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.  All activity logs for the account and all other documents showing the user's posts and other Instagram activities;

e.  All IP logs and other documents showing the IP address, date, and time of a subscribers use of the account;

f.  All data and information associated with any user profile, including photographs, "bios," profile backgrounds, and themes;

g.   All content associated with the subscriber's account, including all photographs, images, News Feed information, status updates, videos, and notes, for the time frame of May 25, 2020 to the present;

h.   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, for the time frame of May 25, 2020 to the present;

i.   All location data associated with the account, including geolocation sharing information with other accounts, for the time frame of May 25, 2020 to the present;

j.   Friends and followers lists, including the friends' and followers' Instagram user identification numbers; groups and networks of which the user is a member, including the groups' Instagram group identification numbers and names and the identification of other members of the groups;

k.   Future and past event postings and tags, for the time frame of May 25, 2020 to the present;

l.   All privacy and account settings;

m.   All records of communications made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" and "Follower" requests, for the time frame of May 25, 2020 to the present;

n.   All records relating to machine cookies;

o.   All "check-ins" and other location information, including records of the user's latitude and longitude, for the time frame of May 25, 2020 to the present;

p.  All records of the account's usage of the "follow" feature, including all Instagram posts and all non-Instagram webpages and content that the user has "liked";

q.  All records of Instagram searches performed by the account, for the time frame of May 25, 2020 to the present;

r.  All comments posted by the subject account holder on items posted by other accounts, for the time frame of May 25, 2020 to the present;

s.  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

t.  All information regarding the particular device(s) used to access the account, including device identifier information and cookie information;

u.  All information about connections between the account and third-party websites and applications;

v.  All records pertaining to communications between Instagram/Facebook and any person or account regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account; and

w.  All communications between Instagram/Facebook and the account.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of Title 18, United States Code, Section 844(f)(1) and (2) (knowing, intentional, and malicious damage and destruction, and attempt, by means of fire, a vehicle, creating substantial risk of injury), and Title 18, United States Code, Section 2 (aiding

and abetting), from inception of the account through the present, including, for each identifier listed on Attachment A, information pertaining to the following matters:

A.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating of the crimes under investigation and to the account owner;

B.  Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

C.  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

D.  Evidence indicating the state of mind of the person(s) involved with the Subject Offenses.

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION

Date of entry ___10/01/2020___

HALL, date of birth (DOB) _____, telephone number
home address _____
_____ was interviewed in Philadelphia, Pennsylvania. After being
advised of the identity of the interviewing Agents and the nature of the
interview, HALL provided the following information:

HALL recently moved his residence from _____
_____ to 5_____
_____. HALL lived at his new residence with his girlfriend,
TOBIAS. HALL and TOBIAS both grew up in Connecticut and have known each
other for many years. HALL and TOBIAS both moved to Philadelphia in an
attempt to find better employment and a change of life patterns. HALL and
TOBIAS had a planned trip to Alaska for a vacation starting on September 17,
2020.

HALL had recently returned from a work trip to San Diego, California.
While on this work trip, HALL did some personal trips into the desert areas
around San Diego to do some exploring. While doing this HALL lost his cell
phone which he had on May 30, 2020. HALL obtained a new phone recently and
got a new phone number. All the photographs and videos from May 30, 2020 and
May 31, 2020 were contained on his GOOGLE PHOTOS account.

*[AGENT NOTE: Interviewing agents requested consent from HALL to search his
cell phone and GOOGLE PHOTOS account. HALL verbally consented to a search of
his cell phone and GOOGLE PHOTOS account. HALL was presented an FD-26 for
both the search of his cell phone and his GOOGLE PHOTOS account. HALL signed
and dated both consent forms. The search of both was conducted during the
interview of HALL by FBI Philadelphia personnel after which the device was
returned to HALL on the same day as the interview. The FD-26s are attached
to this document as a physical and digital 1A.]*

UNCLASSIFIED//FOUO

Investigation on  09/16/2020  at  Philadelphia, Pennsylvania, United States (In Person)

File # 266H-PH-3276900, 266H-PH-3276632          Date drafted  09/18/2020

by  WOOD KYLE THOMAS, Shaun J. Gayer

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.