**PAUL J. HETZNECKER, ESQUIRE**
**Attorney I.D. No. 49990**
**1420 Walnut Street, Suite 911**
**Philadelphia, PA  19102**          **Attorney for Defendant, Anthony Smith**
**(215) 893-9640**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL ACTION** |
| | **:** | |
| **V.** | **:** | |
| | **:** | |
| **ANTHONY SMITH** | **:** | **20-368** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CONSOLIDATED MOTION TO SUPPRESS

**TO THE HONORABLE JUAN R. SANCHEZ, JUDGE, UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA**

Defendant Anthony Smith, by and through his attorney Paul J. Hetznecker, Esquire, files this Memorandum of Law in Support of the Consolidated Motion to Suppress in the above matter and submits the following in support thereof:

On October 27, 2020  Anthony David Alexander Smith was arrested based on an Indictment issued by a grand jury sitting in the Eastern District of Pennsylvania charging him with on 18 U.S.C. § 844(0(1) and (2) (arson of property belonging to an agency receiving federal funding - 1 count);  18 U.S.C. §

844(i) (arson affecting interstate commerce - 1 count); 18 U.S.C. § 231(a)(3)

(obstruction of law enforcement during a civil disorder - 1 count)

18 U.S.C. $ 2 (aiding and abetting). The Indictment alleges that on or about May

30, 2020 in Philadelphia, PA Mr. Smith maliciously damaged and destroyed,

attempted to damage and destroy and aided and abetted the destruction, by  means

of fire, of Philadelphia Police Department Car C-109, a vehicle owned by the

Philadelphia Police Department.

Defendant, Anthony Smith, moves to suppress any and all evidence seized

pursuant to the five (5) separate search and seizure warrants. (See Exhibits A-H)

The Defendant Smith asserts the warrants issued in this case did not provide a

substantial basis for the magistrate's decision that probable cause existed within

the four corners of the affidavit. Additionally, Defendant Anthony Smith asserts

that a hearing pursuant to Franks v. Delaware is warranted as material

misstatements are asserted in each of the affidavits of probable cause.

The first warrant prepared by FBI Agent Bridget Jenkins was issued on

September 15, 2020 for the content of Anthony Smith's Instagram account

pursuant to the Electronic Communication Privacy Act, 18 U.S.C. Section 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A). (See Warrant and Affidavit of Probable Cause,

attached at Exhibit A and Exhibit B).

On October 26, 2020 three separate warrants were issued supported by a consolidated Affidavit of Probable Cause prepared by FBI Agent Laura Laielli pursuant to Federal Rule of Criminal Procedure, Rule 41. (See Exhibits C,D,E,F).

These three search and seizure warrants were issued for Anthony Smith's residence, 5640 Cedar Avenue, Philadelphia, PA, his person, as well as the computers, cellphones and other electronic devices.

The fifth and final warrant was issued on the date of the search, October 28, 2020. During the course of the search of Anthony Smith's residence the FBI observed written material expressing ideas protected under the First Amendment. Upon information and belief, the government prepared a search and seizure warrant after reviewing the content of the material. The written political material that was seized was based on the content of the ideas expressed in those materials. (See Exhibits G and Exhibit H.)

Defendant, Anthony Smith asserts through this Consolidated Motion to Suppress that the issuing Magistrates, the Honorable Sandra Moore Wells for the first warrant, and the Honorable Richard Lloret for the four subsequent warrants, did not have a substantial basis to believe that probable cause existed in support of these warrants. Specifically, the evidence presented within the four corners of the first warrant's Affidavit for Anthony Smith's Instagram account, ( Exhibit B), as

well as Consolidated Affidavit of Probable Cause for the three warrants (Exhibit F)

dated October 26, 2020, does not contain a sufficient factual basis to support the

contention that the Defendant Anthony Smith committed the offenses alleged in

the affidavit, offenses that occurred on May 30, 2020 during the George Floyd/

Black Lives Matter protests in Philadelphia Pennsylvania. A careful review of

these facts set forth in the three separate Affidavits of Probable Cause fail to

establish probable cause.

    In addition, Anthony Smith asserts that the factual misstatements support the

grounds for a evidentiary hearing under Franks v. Delaware.

## I.    **THE AFFIDAVITS DO NOT SUPPORT PROBABLE CAUSE**

### A.    **THE AFFIDAVIT FOR THE INSTAGRAM ACCOUNT IS NOT SUPPORTED BY PROBABLE CAUSE**

    On September 15, 2020 a warrant was signed by Magistrate Judge

Carol Sandra Moore Wells for an Instagram account (Ant Smith, username:

onevillageant, UID 3922142044) maintained and operated by Facebook, Inc., a

company with headquarters in Menlo Park, California.  The government prepared

the application for the search warrant pursuant to 18 U.S.C. §2703(a),

2703(b)(1)(A) and 2703(c)(1)(A). (Exhibits A and B). The purpose of the Search

and Seizure warrant was to require Facebook to disclose to the government records

and other information pertaining to subscriber or customer information associated

- 4 -

with Defendant Anthony Smith, as well as several other individuals who were the subject of the government's investigation. The charges that were that were investigated involved 18 U.S.C. §844(f)(l) and (2), knowing and intentional malicious damage and destruction and attempt, by means of fire, a vehicle creating risk of injury and, Title 18 U.S.C. §2 aiding and abetting.  Under the probable cause section of the Affidavit FBI Agent Bridget E. Jenkins asserted that on May 30, 2020 during a protest related to the killing of George Floyd in Philadelphia, PA "among other things a group of individuals began to riot, smashing storefront windows, looting stores, and attacking multiple marked Philadelphia Police Department vehicles.  These vehicles included one PPD sedan (C-109) near the Municipal Services Building which was set on fire.  The vehicle was destroyed as a result of being set on fire."  (See Exhibit B,  Affidavit of Probable Cause p. 7)

Agent Jenkins asserted that through publicly available news outlets, social media photographs and footage and a general internet search, five individuals were identified as "directly involved in, or in the area of, the arson of the PPD vehicle described above.  These individuals were initially referred to as unidentified subjects 1, 2, 3, 4 and 5." (Exhibit B, p.9 par. 16) The agent then writes that Subject No. 5 was identified as Defendant Anthony Smith. (See Exhibit B, p. 9, Paragraph 17)

In Paragraph 20 Agent Jenkins asserted that "Miller and Matchett, along with Smith were observed on this footage adding paper and other kindling objects to the fire, causing the fire consuming the PPD vehicle to grow." This assertion not only conflates the actions of these three separate individuals it is completely inaccurate. It is clear from the government's evidence provided in discovery that the only act that can be attributed to Anthony Smith did not contribute to the fire. The government's evidence is that Defendant Anthony Smith allegedly threw a single piece of paper into a vehicle which was already consumed by fire. The evidence undermines the government's assertions in the Affidavit of Probable Cause. This is the basis for the request for a Franks hearing.

The next paragraph in the Affidavit sets forth the information that resulted in the identification of Anthony Smith. Specifically, that the on June 17, 2020 the FBI received a tip from the Philadelphia Police Department that they found a possible match to the unknown subject. (Exhibit B, Page 23, Paragraph 52)

According to the Affidavit following the receipt of the tip the FBI searched several databases and based on the information received from the Philadelphia Police a driver's license photo for Anthony Smith was "discovered." (Exhibit B, Page 24, Paragraph 53)[1] Additionally, research through open sources

---

[1] Upon information and belief the Philadelphia Police or other agencies utilized facial recognition

was conducted and a possible Instagram account for Smith was located with the user name antsmith@onevillageant.  Agent Jenkins goes on to assert that Anthony Smith posted photos of a peaceful protest on Instagram on May 31, 2020 which states "I'm not posting any of the risky stuff on here.  You can use your imagination."  Agent Jenkins inserted into the Affidavit a photograph of Anthony Smith participating in a peaceful demonstration.  The agent then asserted that on July 1, 2019, eleven months prior to the arson of the vehicle in this case, Anthony Smith posted a news article on Instagram titled "Several Police Cars Damaged After Hundreds of Teens Gather in North Philadelphia."  In the comments section the agent asserted that Anthony Smith wrote "If you know anyone that was there inform them to delete their posts and pictures.  Avoid hashtags with the work party. Police are monitoring social media to look for vandals."

The next reference in the Affidavit of Probable Cause is to Instagram records obtained pursuant to a Court order on July 31, 2020.  According to the agent these records indicated that the registered name of Instagram user Ant Smith is Anthony Smith using a specific telephone number.  The agent then wrote that based on the above factual statements there is probable cause to believe that this account contains information relevant to the investigation.  (See Exhibit B,

---

software to obtain the identification of Mr. Smith.

Affidavit, page 23-26, Paragraphs 51 through 58)

This first warrant was executed pursuant to the Electronic Privacy Act (EPCA) Section 2703.  Section 2703 sets forth the conditions under which the government may require providers to disclose the contents of stored communications including subscriber records and information.  Furthermore, Section 2703 establishes three primary forms of disclosure of subscriber information, one of which through the issuance of a warrant signed by a magistrate. The procedures are described in 18 U.S.C. Section 2703(a)(b)(1)(A)(c)(1)(a) and (2).  Specifically, the government must establish specific and articulable facts that establish reasonable grounds to believe that the contents of a wire or electronic communication, or records or other information sought are relevant and material to an ongoing criminal investigation.  The Stored Communication Act is designed to prevent potential intrusions on individual privacy arising from illicit access to stored communications, computing operations and large data banks that store emails.  In Re: Nickelodeon Consumer Privacy Litigation, 827 F.3d 262, 276 (3rd Cir. 2016); In Re: Google, Inc. Cookie Placement Consumer Privacy Litigation, 806 F.3d 125 (3rd Cir. 2015)

In order for there to be a search under the Fourth Amendment of the United States Constitution an individual must have a reasonable expectation of

privacy.   Carpenter v. United States, __ U.S. __, 138 S. Ct. 2206 (2018)   In

Carpenter, the United States Supreme Court established that individuals have a

privacy interest in their cell site location information. (CSLI).  In United States

v. Goldstein, 914 F.3d 200 (3rd Cir. 2019), the Third Circuit applied U.S. v.

Carpenter in order to address the question of whether or not the seizure of CSLI

information pursuant to the Stored Communications Act, 18 U.S.C. §2703(d)

required a showing of probable cause.  In Goldstein, the Court concluded that

Section 2703(d) may not be used to access CSLI as it requires less than

probable cause.  In Goldstein, the Court ruled that the government did violate

Goldstein's Fourth Amendment rights when it required the CSLI under Section

2703(d) of the Stored Communications Act. However, the Court did not order

the evidence suppressed as the Court found that the government was acting in

good faith at the time.

In this case Agent Jenkins does invoke Section

2703(a)(b)(1)(A)(c)(1)(a) and (2) which requires the government to "obtain a

warrant issued using the procedures described in the Federal Rules of Criminal

Procedure."  However, the standard applied does not meet the requirements of

the Fourth Amendment.  Based on careful review of the facts the government

cannot establish that the probable cause threshold was met. Consequently, there

no substantial basis for the magistrate's decision that the government satisfied

the probable cause requirement regarding the search and seizure of Defendant

Anthony Smith's Instagram account.

The following sets forth the alleged "criminal conduct" that Agent

Jenkins asserted supported probable cause for the seizure of the content of

Defendant Anthony Smith's Instagram account. Beginning with Paragraph 18

of the Affidavit of Probable Cause the affiant writes:

> "In footage available to the government, the individuals
> believed to be Muath and Smith were observed climbing
> and/or jumping atop PPD vehicle C109 between the time
> it was flipped, and when it was set on fire.  Miller and
> Matchett were observed moving toward the PPD vehicle
> with containers of what appears to be accelerant. Shortly
> thereafter, flames and smoke erupted from the PPD
> vehicle. Additionally, review of the photographs
> available show that a lighted road flare was placed inside
> the vehicle. The investigation continues as to which
> individual placed the flare inside the vehicle.  Miller and
> Matchett, along with Smith, were observed on this
> footage adding paper and other kindling objects to the
> fire, causing the fire consuming the PPD vehicle to grow.
> (Footnote mentions that investigation is ongoing and that
> additional individuals may be added.) Muath is observed
> around the car during the time the kindling objects are
> being added to the vehicle…."

(Exhibit B, Aff. Of Probable Cause pp. 8,9, Paragraphs 18-20)

The failure to distinguish between the alleged actions of Miller,

Matchett and Smith does not establish probable cause that Anthony Smith

committed the crimes alleged. Without specifying the time, sequence of the events, the placing of the road flare into the vehicle and the size of the fire at the time of the alleged placement of "kindling" by Defendant Anthony Smith, the facts submitted in paragraphs 52-58 failed to establish probable cause for the crimes alleged.

In paragraph 52 of the Affidavit Agent Jenkins wrote that the FBI received a "tip" that subject number 5 was Anthony Smith and that the identification was made on June 17, 2020. From that date to the date of the issuance of the warrant for Mr. Smith's Instagram account there is not a single reference to any additional fact that would support the issuance of this warrant on September 15, 2020.

In the ensuing paragraphs Agent Jenkins provides references to statements made in public posts on Instagram that are protected under the First Amendment of the United States Constitution. There is a reference in Smith's public Instagram account to a report in the newspaper regarding an action that occurred a year prior to damage to police vehicles committed by others. There is a public admonition allegedly from Smith for those involved not to make these public posts as the police were monitoring social media. Agent Jenkins then referred to a picture posted on social media of Anthony Smith at a peaceful

protest.

Furthermore, Agent Jenkins indicated that on the date of the incident Anthony Smith exchanged numerous messages with others that she is unable to review. Jenkins then applied the wrong standard by asserting:

> "Accordingly, there is probable cause to believe that this account contains information relevant to the investigation, especially in light of the usage on the day of the arson in Philadelphia."

The fails to meet that standard of probable cause factually and legally. Merely invoking the language from Section 2703(a)(b)(1)(A)(c)(1)(a) and (2) does not meet the standard of probable cause under the Fourth Amendment. The issue is whether the government has met its burden in establishing probable cause that Anthony Smith committed the crimes under investigation and whether the content of his private Instagram account contains evidence in connection with those crimes. Despite the wording in the statute the standard is not relevancy to the investigation but rather whether probable cause exists to support the conclusion that there is evidence to establish that a crime has been committed and that the place to be searched may reveal the instrumentalities or fruits of the enumerated federal crimes under investigation.

The Affidavit fails to meet this threshold. First, as set forth above, there is a lack of specificity regarding the actions allegedly committed by Anthony

Smith that would constitute aiding and abetting the arson that consumed the vehicle. Placing paper or cardboard in a burning vehicle would not constitute aiding and abetting the arson if, as in this case, did not contribute to the arson that destroyed the vehicle.

Secondly, Agent Jenkins effort to criminalize peaceful protest activity and Smith's comments about the criminal mischief committed a year prior as evidence of criminal intent to commit this unrelated activity a year later is ludicrous. The comments are lawful expressions protected under the First Amendment and do not reflect criminal intent to commit crimes stemming from an unanticipated spontaneous event that unanticipated historic demonstration almost a year later.

There is absolutely no connection between that post on July 1, 2019 and the events on May 30, 2020. This is an attempt to fit the alleged actions of Anthony Smith into a distorted paradigm whereby unrelated independent actions of others are now being attributed to the Defendant Anthony Smith.

Finally, seeking the content of politically protected speech by citing politically protected speech as the basis for a search warrant is not only insufficient as a matter of law, it is a dangerous effort the blur the clear lines of demarcation between protected activity and the power to conduct a criminal investigation. On

this ground alone the evidence seized by the government form Anthony Smith's Instagram account should be suppressed.

The second ground for suppression is common to all of the warrants and is based on the completely inaccurate factual outline set forth by Agent Jenkins in the Affidavit of Probable Cause for the Search and Seizure Warrant for the Instagram account. Although different words were used this argument applies with equal force regarding the four subsequent Search and Seizure warrants prepared by Agent Laielli for Anthony Smith's residence, his person, his computer and electronic devices, as well as the content of the written materials searched during the execution of the other three warrants. The argument regarding the need for a Franks hearing is set forth in detail later in this Memorandum.

## B.   THE CONSOLIDATED AFFIDAVIT FOR THREE SEARCH AND SEIZURE WARRANTS, 5640 CEDAR AVENUE, THE PERSON OF ANTHONY SMITH, AND ELECTRONIC DEVICES IS NOT SUPPORTED BY PROBABLE CAUSE.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."  U.S. Const. Amend. IV.

 United States v. Johnson, 592 F.3d 442 (3rd Cir. 2010)

The Fourth Amendment requires that under the totality of circumstances the judicial officer who issued the warrant possess a substantial basis to conclude that there was a fair probability that contraband or evidence of a crime would be found at the subject premises.  Illinois v. Gates, 662 U.S. 213 (1983); United States v. Conley, 4 F.3d 1200 (3rd Cir. 1993) Great deference is owed to the issuing judge's probable cause determination. Ornelas v. United States, 517 U.S. 690 (1996); United States v. Hodge, 246 F.3d 301 (3rd Cir. 2001)

Probable cause exists when, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213 (1983) The magistrate's decision to issue a warrant must be based on sufficient information contained within the four corners of that warrant to establish probable cause. A court reviewing the magistrate's decision must determine whether the magistrate had a substantial basis for concluding a probable cause existed at the time of the review. United States v. Stearn, 597 F.3d 540 (3rd Cir. 2010); United States v. Jones, 994 F.2d 1051 (3rd Cir. 1993) The Court may consider only the facts that were before the magistrate, that is the affidavit of probable cause, and may not consider information from other portions of the record. United States v. Miknevich, 638 F.3d 178 (3rd Cir. 2011)

Although great deference is given to the magistrate's decision this does not mean that a reviewing court should simply rubberstamp a magistrate's conclusions. United States v. Zimmerman, 277 3d 426 (3d Cir. 2002); United States v. Whitner, 219 F.3d 289 (3rd Cir. 2000) Furthermore, the affidavit must be read in a common sense, non-technical manner, and the facts contained therein should be considered as a whole. United States v. Brown, 3 F.3d 673 (3rd Cir. 1993); United States v. Conley, 4 F.3d 1200 (3rd Cir. 1993) Essentially, the reviewing court may consider the type of crime, the suspect's opportunity to conceal the contraband, and the likelihood that a suspect may conceal such contraband at his or her place of residence. United States v. Stearn, 597 F.3d 540 (3rd Cir. 2010); United States v. Burton, 288 F.3d 91 (3rd Cir. 2002).

In Stearn, the Third Circuit reinforced the principle that probable cause is a fluid concept that is determined based on the assessment of probabilities in particular factual contexts. The Court went on to rule that probable cause can be inferred from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and the normal inferences about where a criminal might hide evidence.  In Stearn the Third Circuit relied very heavily on the nature of the crime, drug dealing, and the clandestine manner in which drug dealers conduct their surreptitious activities in reversing the lower court's decision to grant

the motion to suppress.

In <u>United States v. Burton</u>, supra., the Third Circuit ruled that in drug investigations the circumstantial evidence and inferences may establish probable cause to search a residence only if the evidence supports three preliminary factors: (1) the suspected person was actually a drug dealer; (2) the place to be searched was possessed by, or the domicile of the dealer; and (3) that the place to be searched contains contraband linking it to the dealer's drug activity. <u>Burton</u>, 288 at 104. (Also see <u>United States v. Covington</u>, WL 4413606 (E.D. PA., September 8, 2014).

Although the existence of a warrant is ordinarily sufficient to demonstrate that an officer conducted a search in good faith, the Third Circuit has nevertheless identified four situations where an officer's reliance on a warrant would be objectively unreasonable: (1) where the magistrate issues a warrant in reliance on an affidavit is deliberately or recklessly false; (2) where the magistrate abandons his judicial role and fails to execute the warrant in a neutral and attached manner; (3) where the warrant is so lacking indicia of probable cause as to render official belief of its existence entirely unreasonable; or (4) where the warrant is so facially deficient it does not particularize with any specificity the place to be searched or things to be seized. <u>United States v. Hodge</u>, 246 F.3d 301 (3rd Cir.

- 17 -

2001).

A good faith exception exists where the suppression of evidence would be inappropriate because an officer acts in objectively reasonable reliance on the warrant's authority. United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2nd 677 (1984), United States v. Zimmerman, 277 F.3d 426 (3rd Cir. 2002).

In this case the factual basis for crimes charged set forth in the Consolidated Affidavit (Exhibit F, Consolidated Affidavit of Probable Cause) in support of the three warrants (Search Warrants for 5640 Cedar Avenue, Exhibit C, Anthony Smith's person, Exhibit D, and all electronic devices, Exhibit E) is insufficient to establish probable cause. Consequently, there was no substantial basis for the magistrate's decision and therefore, the items seized pursuant to these three warrants should be suppressed.

In addition, as noted above, should this Court find that the magistrate had a substantial basis for the finding of probable cause we are requesting a Franks hearing regarding all five warrants as the information provided in the Affidavit of Probable Cause by Agent Jenkins for the first warrant (Instagram, Exhibit B) and by Agent Laielli in the four subsequent warrants (Exhibit F, Exhibit H) does not accurately portray the sequence of events or context for the alleged actions by

Defendant Anthony Smith.  Had the material omissions and material misstatements been presented in the Consolidated Affidavit of Probable Cause been presented to the magistrates the warrants would not have been issued as probable cause would have been established.

   With respect to the three warrants issued for the residence, Anthony Smith's person and the electronic devices, the facts relative to establishing probable cause are set forth in Paragraphs 10 through 15 of the Consolidated Affidavit. (See Exhibit F)

   In Paragraph 10 the affiant, FBI Agent Laielli asserted that a review of publicly available news outlets and social media photographs, videos and footage and general internet research revealed that three individuals were identified as directly involved in the arson of the PPD vehicle described above.  (PPD vehicle C-109) Agent Laielli identified Defendant Anthony Smith as one of the three individuals "directly involved in the arson of the police vehicle."  (Exhibit F)

   In Paragraph 11 of the Affidavit of Probable Cause Agent Laielli asserted "in footage available to the government… Smith is observed adding what appears to be paper or cardboard and moving other kindling objects in the vehicle. Additionally, review of photographs available show that a lighted road flare was placed inside the vehicle."  The assertion in the affidavit by Agent Laielli, that

Defendant Smith appeared to place a piece of paper or cardboard and then was "moving kindling around" does not establish the probable cause for the crimes charged. The reference placing a piece of paper or cardboard and then "moving kindling around" without any connection to how and when his actions contributed to the arson of the vehicle does not set forth evidence of the crime under investigation.

With respect to Paragraph 12, p. 6, the Agent Laielli asserted "I have examined additional video and photographs obtained by law enforcement.  These videos and photographs include but are not limited to the following photograph which shows Smith in front of C-109 upside down and on fire."  The only photograph referred to in the affidavit is a photograph of what appears to be Defendant Anthony Smith standing several yards away from the police vehicle C-109 which is already engulfed in flames. In this photograph embedded in the affidavit of Probable Cause Defendant Anthony Smith appears to have a cellphone in his right hand and nothing in his left hand[2]

In Paragraph 13 of the Affidavit of Probable Agent Laielli asserted

_____

[2] The FBI specifically omitted from the affidavit the images from the video they obtained from the internet which shows a person purported to be Anthony Smith attempting to place a single piece of paper near and/or inside the vehicle already engulfed in flames which completely undermines any claim that he contributed to the arson.  This is addressed below regarding the request for a Franks hearing.

that based on a review of photographs of the Defendant Anthony Smith that he was

wearing particular clothing. Agent Laielli then provided a description of the

clothing.

       In Paragraph 14, the affiant refers to a search warrant and Affidavit to

extract the content from Defendant Anthony Smith's Instagram account. (Exhibit

A, and Exhibit B) As noted above, the warrant for the content of Anthony Smith's

Instagram (Exhibit A) was signed by Magistrate Wells on September 15, 2020,

three and a half months after the incident. Through the issuance of the warrant for

Anthony Smith's Instagram account the government asserted in this affidavit that

they sought to obtain various memes and postings that showed efforts to encourage

violence against the police. (See Exhibit A and Exhibit B) From that Instagram

search Agent Laielli inserted into the consolidated affidavit a single photograph of

Anthony Smith sitting on top of the vehicle with several other protesters prior to

the fire being started by an unknow person. Prior to the issuance of the three

warrants on the date of Anthony Smith's arrest the FBI had obtained video and

photos that revealed the unidentified person responsible for starting the fire with a

road flare that eventually engulfed police vehicle C-109 in flames.

       Paragraph 15 of the Consolidated Affidavit (Exhibit F) sets forth facts

related to Anthony Smith's connection to the property at 5640 Cedar Avenue,

Philadelphia, PA 19143. The above factual summary is the basis upon which the warrant was issued.

In order to establish probable cause for the searches conducted in this case the government must present to the magistrate evidence that establishes a substantial basis that a crime has been committed and that the defendant committed the crime. A review of the four corners of the Affidavit in this case clearly demonstrates that there was no crime committed by Defendant Anthony Smith as the facts simply do not support the contention that Defendant Anthony Smith started the fire or aided and abetted the arson. Furthermore, the warrants in this case are so lacking indicia of probable cause as to render official belief of its existence entirely unreasonable. Consequently, there is no good faith basis to assert that probable cause existed for the crimes charged.

On this basis alone the warrants issued on October 26, 2020 for the person of Anthony Smith, the residence of 5640 Cedar Avenue, Philadelphia, where he was residing, and the search of his cellphone, computers and other electronic devices were issued without probable cause and in violation of the Fourth Amendment to the United States Constitution as there was no substantial basis for the magistrate's decision to approve the warrants.

**D.     WARRANT WAS IMPROPERLY ISSUED FOR WRITTEN POLITICAL MATERIALS AS IT WAS IN VIOLATION OF THE PLAIN VIEW DOCTRINE.**

On October 28, 2020 three Search and Seizure warrants were issued for Anthony Smith's residence, his person, and all electronic devices. (Exhibits C,D,E Search and Seizure warrant, Exhibit F, Consolidated Affidavit of Probable Cause in support of the warrant.) During the course of the search of Mr. Smith's residence FBI agents observed various posters and written materials. Specifically, investigators read various items in Mr. Smith's bedroom that the government has labeled reflecting "anti-police ideology" including signs, banners, reading materials, pamphlets and handwritten notes.  These items were allegedly observed in "plain view" during the search of Mr. Smith's bedroom. Many of the items were found among several piles of written material found on the floor. Additional items were found inside a duffle bag located in Mr. Smith's bedroom that were not in plain view. The government sought approval for a fifth warrant as the posters and written material was not covered in the first three search warrants. (Exhibit G, Search and Seizure warrant, Exhibit H, Affidavit of Probable Cause in support of the warrant.)  Through Agent Laielli the government secured authorization from the magistrate to seize written materials wholly unrelated to criminal activity.  The items seized were political materials, writings, banners, signs, pamphlets and

reading materials protected under the First Amendment of the United States Constitution. The agent inaccurately asserted that based on the factual information contained in the search warrant and accompanying affidavit that there was probable cause to believe these items constituted evidence in support of the commission of a criminal offense, namely arson of the police vehicle. The affiant further asserted without any factual basis, that the seizure of these materials expressing political ideas would lead to the identity of alleged co-conspirators and accomplices.  Mr. Smith asserts that during the search of his bedroom the reading of written materials went beyond the scope of the initial warrant and therefore, violated his Fourth Amendment rights under the United States Constitution.

Under the "plain view" doctrine the police may "seize" incriminating evidence in plain view during the course of a lawful search as the Courts have concluded that such a seizure is not an intrusion on the privacy interests of the targeted individual. Horton v. California, 496 U.S. 128 (1990); United States v. Menon, 24 F.3d 550 (3rd Cir. 1994). For a plain view seizure to be valid three conditions must be met. (1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence can be viewed; (2) the incriminating evidence must be immediately apparent, and (3) the officer must have a lawful right of access to the object itself. United States v. Menon, 24

F.3d at 559. The plain view doctrine is applicable when the police have a warrant to search a given area for specified items and in the course of the search come across some other item of incriminating character. United States v. Stabile, 633 F.3d 219 (3rd Cir. 2011).

In this case, as argued above, the warrant for the search of 5640 Cedar Avenue, the residence of Anthony Smith was not supported by probable cause. Therefore, the government has failed to meet the first condition. Similarly, with respect to the third condition, that the officer have a lawful right of access to the object itself, the Defendant Anthony Smith asserts that since the search warrant for his residence was not supported by probable cause the FBI did not have lawful access to the written materials.

With respect to the second condition, according to FBI Agent Laielli, the written materials which reflected "anti-police ideology" cannot be construed as incriminating in nature as criticism of the police is protected by the First Amendment of the United States Constitution. The magistrate did not have a substantial basis to believe that the writings, pamphlets, banners and signs expressing criticism of the police, specifically the killing of unarmed Black men by police could be considered incriminating in nature. This is a clear example of the government overreaching and criminalizing dissent against the police and the

government. The seizure of these items based on their protected political content

poorly shrouded under the guise of Fourth Amendment legitimacy through the

request for a warrant, reeks of authoritarianism. There is not one shred of evidence

that these alleged "anti-police" writings as characterized by the FBI provide any

support for an investigation into criminal conduct. Rather, these political materials

protected under the First Amendment of the United States Constitution reflect an

opposing point of view to the right-wing "law and order" ideology and provide a

clear path to understanding the government's real motivation in charging Mr.

Smith with insufficient evidence in the first place.  None of the documents seized

which would include writing, posters or pamphlets, provides evidence of a crime

and therefore, there was no substantial basis for the Magistrate's decision to issue

the warrant as there was no probable cause to support the position that written

materials protected by the First Amendment which reflect criticism of the police

killings of unarmed Black men, offers incriminating evidence. It should not be lost

on this Court that the FBI and other federal authorities labeled the Black Lives

Matter movement, a contemporary civil rights movement in the grand tradition of

the NAACP, Southern Christian Leadership Conference, and the Student Non-

violent Coordinating Committee, a "Black Extremist Identity Group" under the

Trump Administration and a threat to national security.  Since 2017 the FBI has

designated many Black civil rights movements and organizations, such as the

Black Lives Matter movement as "Black Identity Extremist groups."  This is new

label created by the FBI under the Trump Administration designating affiliated

organizations as posing a potential threat to national security.

https://www.washingtonpost.com/news/posteverything/wp/2017/10/19/we-say-black-lives-matter-the-fbi-says-that-makes-us-a-security-threat/

https://www.brennancenter.org/our-work/analysis-opinion/fbi-targets-new-generation-black-activists

Although BIEG is a new designation created by the FBI it reflects a

long- standing practice by the FBI and the Justice Department to marginalize and

criminalize progressive movements in this country. COINTELPRO is the most

significant example of the effort by the FBI to undermine the rights of individuals

involved in progressive political movements.

This is in line with the discredited history of the FBI under J. Edgar

Hoover labeling progressive organizations advocating for social justice threats to

national security.  The overwhelming evidence is that the Black Lives Matter

movement, a peaceful civil rights movement seeking racial justice and police

accountability may be the largest movement in history of the United States. It has

been estimated that during the week following the killing of George Floyd in

Minneapolis Minnesota, upwards of 26 million people marched in support of Black Lives Matter movement throughout the United States. On a single day in Philadelphia, June 6, 2020, it is estimated that more than 50,000 people marched in support of the Black Lives Matter movement. This all occurred during the height of a pandemic.

https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html

The government's effort to criminalize dissent is reflected in the Affidavit of Probable Cause and the seizure of written materials from Anthony Smith, an outspoken local activist and organizer of this movement for racial justice. Likewise, this fifth warrant is so lacking indicia of probable cause as to render official belief of its existence entirely unreasonable. Consequently, there is no good faith basis to assert that probable cause existed for the crimes charged, and no good faith basis to believe that the written materials, expressing protected political beliefs, were in anyway connected to a crime.

For the reasons stated above, the warrant to search Anthony Smith's residence was not supported by probable cause. Likewise, the written materials which were the object of the search in this fifth warrant is not supported by probable cause and therefore, the magistrate did not have a substantial basis for

issuing the warrant as there was nothing of an incriminating nature to justify the seizure.

Wherefore, the written materials seized pursuant to the fifth warrant issued on October 28, 2020 (Exhibit G, the Search warrant, Exhibit H, the Affidavit of Probable Cause) after the FBI agents read the materials found on the floor of Mr. Smith's bedroom and after they opened a duffle bag must be suppressed as the government has not met its burden under the plain view doctrine.

Furthermore, the magistrate did not have a substantial basis for issuing the warrant as it lacks probable cause to support the position that any of the written materials seized evidenced intent to commit a crime and the good faith does not apply.

## E.    FRANKS HEARING IS REQUIRED

The failure by the affiants, Agent Jenkins for the first warrant (Exhibit A and Exhibit B) and the subsequent warrants prepared by Agent Laielli, (Exhibits C,D,E,F,G,H)  to reveal material facts setting forth the actual sequence of events and the actual conduct purportedly engaged in by Defendant Smith, constituted material omissions and material misstatements requiring a hearing pursuant to Franks v. Delaware.

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in the affidavit of probable cause supporting a warrant if the defendant can make the requisite preliminary showing.  <u>Frank v. Delaware</u>, supra., <u>United States v. Yusef</u>, 461 F.3d 374 (3rd Cir. 2006).  The Court has permitted the right to challenge based on factual omissions from the warrant and affidavit.  See <u>Yusef</u>, 461 F.3d at 383; <u>Wilson v. Russo</u>, 212 F.3d 781, 787 (3rd Cir. 2000)

Under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) a defendant is entitled to a hearing if he/she can make a substantial preliminary showing that a false statement was included in the affidavit and that the alleged false statement is necessary to the finding of probable cause.

The Third Circuit has set forth the standard as to what constitutes reckless disregard for the truth regarding both false statements and omissions under <u>Franks v. Delaware</u>.  In <u>United States v. Yusef</u>, 461 F.3d 374 (3rd Cir. 2006) the Third Circuit established the parameters when evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth. Specifically, the Court held that; (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an

officer has obvious reasons to doubt the truth of what he/she is asserting." <u>Yusef</u>, 461 F.3d at 383.

When assessing the materiality of a false statement the court is required to excise the false statement from the affidavit through a redaction process. In contrast when accessing the materiality of an omission the court must insert the omitted information into the original affidavit. If the defendant meets the burden the Fourth Amendment requires that the fruits of the search must be excluded to the same extent as if probable cause was lacking in the face of the affidavit. <u>United States v. Frost</u>, 999 F.3d 737 (3rd, Cir. 1993) The Third Circuit has held that omissions are made with reckless disregard if an officer withholds a fact in his knowledge that any reasonable person would have known that this was the kind of thing the judge would wish to know. <u>Wilson v. Russo</u>, 212 F.3d 781 (3rd Cir. 2000); <u>United States v. Jacobs</u>, 986 F.2d 2135 (8th Cir. 1993) When there is a challenge to the truthfulness of the factual statements in the affidavit of probable cause the court must determine whether the defendant has proven by a preponderance of the evidence that the affiant knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant. <u>Sherwood v. Mulvihill</u>, 113 F.3d 396 (3rd Cir. 1997); <u>United States v. Rivera</u>, 347 Fed. Appx. 833 (3rd Cir. 2009).

The failure to set forth the chronology of events and describe precise actions of the person identified as Anthony Smith constitutes a material omission, as well as a material misstatement of the evidence which requires an evidentiary hearing pursuant to <u>Franks v. Delaware</u>.  Even if this Honorable Court finds that the magistrate had a substantial basis for a finding of probable cause, that finding was based upon material facts omitted from the affidavits, as well as material misstatements asserted in the affidavits.  If included in the affidavit the omitted facts would have negated probable cause and resulted in a finding that there was no substantial basis for the magistrate's decision to issue the warrants in this case. Had Agent Jenkins and Agent Laielli presented the magistrates with the evidence setting forth the proper chronology of events and the specific actions attributed to Anthony Smith, neither of the magistrates would not have issued the warrants in this case.

With respect to the first Affidavit submitted by Agent Jenkins in support of Search and Seizure Warrant for the content of Anthony Smith's Instagram account (Exhibit A and Exhibit B), the factual statements are inaccurate as it sets forth a false chronology and mischaracterizes the actions by Anthony Smith.

As revealed in the video taken by an unknown individual. (Exhibit I, Video 7/27 Video 3) Defendant Smith was neither the source of the arson nor did he aid or abet the arson by allegedly inserting a single piece of paper into police vehicle C109 as it was already engulfed by a bonfire started by an unknown individual. The failure to present this evidence to the magistrate violated Mr. Smith's rights under the Fourth Amendment of the Constitution as this constitutes a material omission. The video (Exhibit I) was necessary for the magistrate's review in order for that magistrate to receive the complete and accurate account of the conduct attributed to Anthony Smith. If the magistrate had viewed the video (Exhibit I) that was in the government's possession at the time the warrant was submitted for approval, the magistrate would not have found probable cause that Anthony Smith had committed the crimes under investigation.

The material misstatement made by Agent Jenkins is set forth in Paragraphs 18-21 of the Affidavit of Probable Cause for the Instagram warrant. (Exhibit B)

Specifically, Agent Jenkins wrote: " In footage available to the government, the individuals believed to be Muath and Smith were observed climbing and jumping atop PPD vehicle C109 between the time it was flipped and when it was set on fire.  Miller and Matchett were observed moving toward the

PPD vehicle with containers of what appeared to be accelerant. Shortly thereafter, flames and smoke erupted from the PPD vehicle. Additionally, review of photographs available show that a lighted road flare was placed inside the vehicle. The investigation continues as to which individual placed the flare inside the vehicle. Miller and Matchett, along with Smith, were observed on this footage adding paper and other kindling objects to the fire, causing the fire consuming the PPD vehicle to grow." (Exhibit B, page 9, Par. 18-21) The inferences drawn from the way this was presented to the magistrate is inaccurate and the conclusion that anything done by Anthony Smith caused the fire to grow is patently false. Based on the videos/photos in the possession of the government the fire was started by an unidentified male with no connection to Anthony Smith, threw a road flare into the vehicle on the opposite side of the vehicle. (See Exhibit J). Additionally, Miller and Matchett, are depicted together in a video near the vehicle. Anthony Smith is not with either of these individuals when they are near C109. So the implication that "Miller and Matchett, along with Smith, were observed on this footage adding paper and other kindling objects to the fire causing the fire to grow," is undermined by the video evidence. Anthony Smith is by himself when he approaches PPD vehicle C109 when he allegedly places a single piece of paper which has already engulfed the vehicle in a raging inferno. As the video reveals the piece of paper

placed into a raging inferno did not cause the fire to grow.

Similarly, Agent Laielli's decision to omit the proper sequence of events gave the clear impression that Mr. Smith engaged in conduct which contributed to the fire. This false chronology in conjunction with the decision to omit the fact that all Mr. Smith did was allegedly place a single piece of paper into a vehicle already consumed by fire, falls squarely in the purview of the <u>Franks v. Delaware</u>.  The mischaracterization of the facts as set forth in the affidavit along with the material omissions from the affidavit require an evidentiary hearing pursuant to <u>Franks v. Delaware</u>.

The critical material information Agent Laielli omitted from this paragraph is that the road flare, placed inside the police vehicle by an unknow individual not connected to Defendant Smith, (Exhibit J) had already engulfed the entire police vehicle in flames long before Defendant Smith approached the vehicle and appeared to place a single piece of paper near or into the vehicle.

Based on the wording set forth in Paragraph 11 of the affidavit Agent Laielli's intention was to imply that Defendant Anthony Smith inserted the paper or cardboard directly onto the road flare to serve as kindling to facilitate the burning of the vehicle. The actual sequence of events is reflected in the video evidence (Exhibit I) which reveals the Defendant Smith, approach the police

vehicle C-109 with a single piece of paper while the interior of the vehicle is

completely engulfed in flames. Anthony Smith allegedly approached the side of

the burning vehicle and crouched down with a single piece of paper in his hand. As

the piece of paper is placed near the flames of the burning police vehicle it is

blown out of the vehicle from the force of the wind generated by the inferno

shooting out from the inside of the vehicle. The video cuts away from the location

and then shifts back to the person purportedly to be Defendant Smith depicting an

attempt to place the piece of paper back into the flames engulfing the vehicle.  This

video was in the possession of the government at the time the Consolidated

Affidavit was prepared.

   Agent Laielli's failure to recount the actual chronology of the events

which clearly demonstrates that the alleged crime of arson of the police vehicle had

already taken place at the time the Defendant Smith allegedly placed a single piece

of paper into a vehicle completely engulfed by fire, failed to establish probable

cause for the crimes alleged in the affidavit of probable cause.

   Specifically, the failure by the affiant to set forth the actual sequence

of events which revealed that the Defendant Smith neither initiated nor contributed

to the fire with the addition of a single piece of paper placed into the raging inferno

that had ready engulfed the police vehicle, clearly establishes that there was no

probable cause to support the assertion that the Defendant Smith committed a crime.

Furthermore, the failure by the affiant to reveal these material facts setting forth the actual sequence of events and the actual conduct purportedly engaged in by Anthony Smith, the information necessary for the magistrate's determination regarding existence or lack of probable cause was intentionally omitted.  Based on the wording set forth in Paragraph 11 of the affidavit Agent Laielli's intention was to imply that Defendant Anthony Smith inserted the paper or cardboard directly onto the road flare to serve as kindling to facilitate the burning of the vehicle. Based on the evidence provided by the government in discovery this statement is completely inaccurate.  (See Exhibit F, Paragraph 11, p. 5 of the Consolidated Affidavit of Probable Cause, and Exhibit I, Video 7/27 Video 3). This is a material misstatement of the evidence and therefore, requires a Franks hearing.

The failure to set forth the chronology of events and describe precise actions of the person identified as Anthony Smith constitutes a material omission, as well as a material misstatement of the evidence which requires an evidentiary hearing.

## **CONCLUSION**

Based upon a review of the four corners of both affidavits supporting the first four warrants for the content of Anthony Smith's Instagram account, 5640 Cedar Avenue, Philadelphia, Pennsylvania 19143, the location where he resided, his person, the computers and other electronic devices, as well as the subsequent affidavit in support of a seizure of writing materials protected under the First Amendment, the was no substantial basis for the existence of probable cause supporting the issuance of all five search warrants.

Additionally, Defendant Anthony Smith requests an evidentiary hearing pursuant to <u>Franks v. Delaware</u> as there are clear material omissions and misstatements regarding the alleged actions or conduct of Anthony Smith that day which would eliminate probable cause to believe that Mr. Smith engaged in criminal conduct.

WHEREFORE, Defendant, Anthony Smith, respectfully requests that Your Honor grant the Motion to Suppress on all of the items pursuant to the argument set forth above. In the alternative, Anthony Smith respectfully requests an evidentiary hearing pursuant to <u>Franks v. Delaware</u>.

Respectfully submitted,
*/s/ Paul J. Hetznecker, Esquire*
Paul J. Hetznecker, Esquire

DATE: <u>August 13, 2021</u>          Attorney for Defendant, Anthony Smith

## <u>CERTIFICATE OF SERVICE</u>

I, Paul J. Hetznecker, hereby certify that a true and correct copy of

Defendant's Memorandum in Support of Defendant's Consolidated Motion to

Suppress was served on the following via the Court's electronic filing system (ecf):

**Amanda R. Reinitz, Esquire**
**Assistant United States Attorney**
**615 Chestnut Street, Suite 1250**
**Philadelphia, PA  19106**

<u>/s/ Paul J. Hetznecker, Esquire</u>
Paul J. Hetznecker, Esquire
Attorney for Defendant, Anthony Smith

DATE:      <u>August 13, 2021</u>