## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 20-368-03** |
| **ANTHONY SMITH** | : | |

## ORDER

     **AND NOW**, this     day of             , 2021, after reviewing the submissions by the government and defense counsel it is hereby **ORDERED** that the Defendant's Motion to Suppress Evidence is **DENIED**. It is further **ORDERED** that the Defendant's Motion for a *Franks* hearing is **DENIED.**

                    **BY THE COURT:**

                    _____

                    **HONORABLE JUAN R. SANCHEZ**
                    **Chief Judge, United States District Court**
                    **Eastern District of Pennsylvania**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 20-368-03** |
| **ANTHONY SMITH** | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A *FRANKS* HEARING

The United States of America, through its attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Amanda R. Reinitz, Assistant United States Attorney for the district, respectfully submits this response in opposition to the defendant's motion to suppress physical evidence and request for a *Franks* hearing. The defendant, Anthony Smith, and his co-defendants are charged by indictment with one count of arson of property belonging to an agency that receives federal funding, while creating a substantial risk of injury to others, and aiding and abetting, in violation of 18 U.S.C. §§ 844(f)(1), (2) and 2 (Count One); one count of arson affecting interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Two); and one count of obstruction of law enforcement during a civil disorder, and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three). This arson took place in broad daylight in view of dozens of people. Since the arson, the government has collected photographs and video of the actors on

1

that day and have charged the individuals for whom evidence shows them placing combustible materials into the police car, including defendant Smith.

As part of its investigation, the government sought and obtained a search warrant for several social media accounts, including defendant Smith's, as well as co-defendant Matchett, and other individuals who were identified as being in the area of the car around the time of the arson.[1] The purpose of the Smith search warrant – as clearly set forth in the warrant – was to gather any available photographic or video evidence from the arson in question, as well as to gather any evidence, if it existed, as to motivation and/or planning of the arson, and any statements made regarding the criminal activity at issue.

Upon federal indictment of Smith and his co-defendants, the government sought, and obtained, a warrant to search the homes and electronic devices of Smith and co-defendant Miller to search for evidence of the arson for which they had been charged. The affidavit for permission to search Smith's home, person, and electronic devices set forth that he had been indicted by a federal grand jury for one count of arson of property belonging to an agency that receives federal funding, while creating a substantial risk of injury to others, and aiding and abetting, in violation of 18 U.S.C. §§ 844(f)(1), (2) and 2 (Count One); one count of arson affecting interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Two); and one count of obstruction of law enforcement during a civil disorder, and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three). The affidavit went on to request permission to

---

[1] The government did not seek a warrant for the social media accounts of Carlos Matchett, as the District of New Jersey had previously sought and obtained a federal search warrant for his accounts due to offenses for which Matchett was arrested in New Jersey.

seize evidence of the enumerated crimes, including various physical items that Smith wore the day of the arson, as well as any evidence of the arson, or the planning, motivation, or research on the commission of such an offense.

While conducting this search, law enforcement observed, in plain view, items that referenced anti-police ideology, and sought to seize these items to review them for any evidence of motivation, planning, and/or identity of coconspirators. Accordingly, law enforcement sought a "piggyback" warrant from Magistrate Judge Lloret before seizing those materials.

Counsel for Smith argues that postings on social media, as well as printed materials, cannot be reviewed for evidence of arson, including not only documentation or statements about the arson, but planning or motivation for committing the crime of arson. This assertion is without basis. Defendant Smith is not charged with a hypothetical "First Amendment" crime – indeed, no such crime exists. He is charged with arson and related offenses, and the warrants were sought and obtained to search for evidence of arson and the related offenses that he is charged with.

The warrants the defendant seeks to suppress include detailed statements of the review of the evidence in the case by the case agents. Furthermore, the case agents did not knowingly or recklessly make any false statements or omissions in the affidavit. Moreover, the good faith exception is used only in the presence of improper law enforcement conduct which did not occur here. Therefore, assessing the good faith exception to the exclusionary rule is irrelevant and unnecessary. However, even if the affidavits were lacking in some way, the record is clear that the agents acted in good faith when obtaining the warrants from federal magistrates sitting in this District. Thus,

Defendant's Motion to Suppress should be denied, and there is no basis for a *Franks* hearing on the subject warrants.

## I.      FACTUAL BACKGROUND

On or about May 25, 2020, George Floyd died while in the custody of the Minneapolis, Minnesota, Police Department.  The circumstances surrounding Floyd's death drew national media attention.  In the days following Floyd's death, large-scale protests were held throughout the United States.

One such protest took place on Saturday, May 30, 2020, in and around Philadelphia, Pennsylvania.  While the protest earlier in the day was peaceful, violence erupted later in the day.  Around 5:30 p.m. on May 30, a group of individuals spray-painted and flipped over a Philadelphia Police Civil Affairs car, numbered C-109, near the Municipal Services Building in Philadelphia.

The car was then burned.  Photographs of the car show a lit road flare being placed in the vehicle.  The government has been unable to determine who placed the road flare in the vehicle.  However, several other individuals were identified as placing combustible items into the vehicle.  By aiding literal fuel to the fire, these individuals contributed to the arson of vehicle C-109.

Three individuals have been charged, including defendant Anthony Smith.  He is seen near the vehicle in photographs and seen placing items into the vehicle in at least two videos.  In one video[2] (bates 727, video 3) he is seen approaching the vehicle and throwing what appears to be paper or cardboard into it.  In the other video (bates 1288),

---

[2] Defendant's brief references a video I attached as an exhibit.  This exhibit has not been provided to the government, but based upon the bates number provided, the government knows which video the defendant is referencing.

which is an overhead camera view, the car is seen before it is engulfed in flames. In this video, several people are seen approaching the car, including defendant Smith. Smith is seen approaching the upside-down car not once, but twice, to insert combustible materials into the vehicle. Smith is easily identifiable as the video zooms in due to his appearance, including a lighter-colored shirt and a face covering that is square in shape with strings hanging down when untied that can be seen in the video. The first time Smith is seen approaching, there is a small amount of smoke coming out of an open car door on the opposite side from where Smith approaches. Smith then approaches the car, hesitates, then places an item appearing to be paper directly into the car. He is seen walking away from the car, then walking towards discarded cardboard / paper on the street, picking it up, and returning to the car to place it in the car as the smoke coming from the car grows. He then picks up an identified item from the ground and places it into the vehicle.

After Smith and other individuals were identified, law enforcement agents conducted a public search of Instagram, where Smith posted a picture of him near the Art Museum on May 30, 2020. Smith is seen wearing a light-colored shirt with lettering saying, "WHEN I WAS 11, I TURNED 13 CUZ ION F*CK WITH 12."[3] The caption accompanying the picture included the statement "I'm not posting none of the risky stuff on here. You can use your imagination." *See* Defense Exhibit B, page 25. The government presented a search warrant to the Honorable Carol Sandra Moore Wells for authorization to search six social media accounts, only one of which belonged to Smith.

---

[3] "Fuck 12" is a slang term meaning "fuck the police."

Magistrate Judge Wells authorized this search warrant on September 15, 2020. *See* Defense Exhibits A and B.

After Smith was indicted by a grand jury sitting in this district, the Honorable Richard A. Lloret issued a warrant to search Smith's residence, his person, and his electronic devices for evidence relating to the events of May 30, 2020, including evidence of motive, planning, and statements regarding the arson of the police vehicle. Items authorized to be seized included clothing; a face mask; sneakers; eyeglasses; indicia of residency; and electronic devices including cellular telephones. Judge Lloret authorized this warrant on October 26, 2020. *See* Defense Exhibits C, D, E, and F.

While conducting the search authorized by this warrant, law enforcement officers found items that clearly referenced anti-police ideology, including signs, banners, reading material, pamphlets, and handwritten notes. Law enforcement did not review this information in detail, but, rather, sought a "piggyback" warrant to seize and examine these items for evidence of Smith's motive and planning. Judge Lloret reviewed this warrant and authorized it on October 28, 2020. *See* Defense Exhibits G and H.

## II.    ARGUMENT

In his motion to suppress, the defendant first claims that the three affidavits of probable cause in support of these search warrants was insufficient within their four corners. The defendant next claims the affidavits were invalid because they contained material omissions and false statements that were made with a reckless disregard for the truth. Those arguments are meritless and this Court should deny his motion to suppress.

### A. The affidavits accompanying the warrants are sufficient and showed a substantial basis for probable cause.

Probable cause is a flexible, common-sense standard. Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been…committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1310–11, 93 L. Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790). The standard for probable cause is a very low bar. *Id.* at 174. When working with the standard of probable cause, law enforcement and the court must deal with probabilities. *Id.* at 175.

While the probable cause standard was, in part, enacted to protect citizens from unreasonable intrusions of privacy, it is also designed to give law enforcement officers "fair leeway for enforcing the law in the community's protection." *Id.* at 176. In the course of executing their duties, law enforcement officers are faced with ambiguous situations, and there must be room for officers to make reasonable mistakes when acting on the facts that sensibly lead to their conclusions of probability. *Id.* "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement." *Id.*

A magistrate's determination of probable cause should be paid great deference by reviewing courts. *United States v. Harvey*, 2 F.3d 1318, 1321–22 (3d Cir. 1993). The duty of the reviewing court is simply to ensure that the signing authority had a substantial basis for concluding that probable cause existed. In evaluating a search

warrant, the Court should "[k]eep in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is substantial basis for a fair probability that evidence will be found." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). Here, based on all of the evidence set forth in the affidavits, this standard was easily met.

The three affidavits the defense quibbles with set forth substantial probable cause. In fact, two of the three are issued to look for items of evidence for crimes for which the defendant had already been indicted. These warrants are extensive recitations of the agents' review of evidence in this case. The social media warrant affidavit contains 28 pages of information (not including attachments); the warrant for Smith's house and electronic devices is 20 pages; and the "piggyback" warrant for information found at Smith's house is 3 pages but incorporates the 20-page warrant for Smith's house and electronic devices. *See* Defense Exhibits B, F, and H. The government will discuss these comprehensive affidavits in turn.

### i.   The Search Warrant for Six Social Media Accounts

Smith states that there is a "failure to distinguish between the alleged actions of Miller, Matchett, and Smith" in the warrant seeking to search the social media accounts. A plain reading of the affidavit shows that this allegation is without merit. Paragraphs 18 through 20 set forth what actions are observed by law enforcement, including that only Miller and Matchett were seen with containers appearing to be accelerant and that Smith is seen only adding paper or other kindling to the vehicle.[4]

---

[4] The affidavit also discusses two other individuals who were seen near the vehicle, but have not been observed placing any items into car C-109, and accordingly were not

The affidavit then discusses six social media accounts, including how they were developed as relevant to the investigation, and specific information as to how each account was likely to lead to either to direct evidence of the arson in question, and/or statements regarding the arson, or motivation and planning for the arson. Only one of these accounts belonged to defendant Smith. The accounts of subjects of the arson were being requested to identify any videos or photographs from the time of the arson, as well as any evidence of any motivation, planning, or statements about this arson. In addition to subjects of the investigation, the warrant sought information from accounts from individual S.H., who was identified as a witness who had stated he had used social media on the day of the arson to document what he saw in the city.

In discussing the one account belonging to defendant Smith, Agent Jenkins discusses the results of a public search of Instagram, where Smith posted a picture of himself near the Art Museum on May 30, 2020. Smith is seen wearing a light-colored shirt with lettering saying, "WHEN I WAS 11, I TURNED 13 CUZ ION F*CK WITH 12." The caption accompanying the picture included the statement "I'm not posting none of the risky stuff on here. You can use your imagination." A screen shot of this post was included in the affidavit for the magistrate judge to review for herself. *See* Defense Exhibit B, page 25. Thus, in providing this post in the warrant, Agent Jenkins showed that Smith was clearly in possession of photographs from May 30, 2020, and was utilizing his Instagram account in the same time frame.

Additionally, Agent Jenkins included a screenshot of a posting made Smith regarding damage to police cars. Agent Jenkins specifically stated that his post was

_____

charged. To protect their privacy, the government will refer to these individuals by their initials.

made on "July 1, 2019, approximately 11 months prior to the arson at issue in this investigation..." *See* Defense Exhibit B, paragraph 57. The screenshot shows that Smith stated "if you know anyone that was there inform them to delete the posts and pictures. Avoid hashtags with the word party. Police are monitoring social media to look for vandals." This post shows that Smith, even prior to May 2020, was aware that police utilize social media to look for evidence of crimes and took great care in what he posted publicly as a result. Accordingly, these posts made clear that posts and statements made privately on Smith's account were likely to contain additional evidence on the arson at issue, and thus, justified the application for a search warrant.

In his brief, Smith's counsel makes the irrelevant argument that social media postings are protected by the First Amendment. *See* Defense brief, paragraphs 36, 42. Of course, Smith has not been charged with any crime relating to speech – he has been charged with arson, and his public and private statements may still be relevant evidence of that crime. Smith, as all Americans are, is entitled to use social media to post pictures and statements for the world to see. However, law enforcement is also likewise able to view public posts such as those made by Smith – something Smith's own words recognize. In this case, viewing those posts provided not only a clear picture of what Smith was wearing on the day of the arson – matching the outfit he is seen wearing at the car arson; but also, statements about his "risky" activity on the day in question. It is common sense that he would not post any "risky" behavior because he is well aware that law enforcement can view public posts, and thus he is careful not to publicly post any indication of what he characterizes as "risky stuff."

Therefore, the affidavit in support of the search of Smith's Instagram account is sufficient within its four corners to establish probable cause.

### ii.    The Search Warrants for Smith's residence, person, and electronic devices

Smith next argues that the warrants for his residence, person, and electronic devices should be suppressed because adding combustible materials to a fire does not establish probable cause for the crimes that a grand jury had indicted Smith on prior to the issuance of these warrants.  The assertion that adding fuel to a fire does not support probable cause for arson is bewildering.[5]  Moreover, there is probable cause to believe Smith committed arson of property belonging to an agency that receives federal funding, while creating a substantial risk of injury to others, and aiding and abetting, in violation of 18 U.S.C. §§ 844(f)(1), (2) and 2; arson affecting interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2; and obstruction of law enforcement during a civil disorder, and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2, because a grand jury found probable cause for these crimes when it indicted Smith in a three-count indictment.  This indictment is discussed in paragraph 2 of TFO

---

[5] In fact, multiple courts have ruled that convictions for aiding and abetting arson for individuals who are not even present when an arson occurs is proper.  *See, e.g., United States v. Barry Smith*, 2010 WL 1791431 (N.D. Mississippi, May 4, 2010) (upholding indictment on 18 U.S.C. § 844(i) for defendant charged with providing gasoline to individuals who later set fire to vehicles); *United States v. Mitchell*, 23 F.3d 1 (1st Cir. 1994) ("Defendant suggests that, because he did not actually set the fire, he was merely a 'culpable intermediary' whose role in the offense was less flagrant than that of Wallace. This contention, of course, flies in the face of the evidence that defendant initiated and orchestrated the entire scheme. In any event, the precise nature of defendant's involvement is of little relevance, for aiding and abetting 'is not a separate offense' from the underlying substantive crime. *United States v. Sanchez,* 917 F.2d 607, 611 (1st Cir.1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991). One who aids and abets an offense "is punishable as a principal," 18 U.S.C. § 2, and "the *acts* of the principal become those of the aider and abetter as a matter of law." *United States v. Simpson,* 979 F.2d 1282, 1285 (8th Cir.1992) (emphasis in original), *cert. denied,* 507 U.S. 943, 113 S.Ct. 1345, 122 L.Ed.2d 727 (1993).

Laielli's affidavit.  *See* Defense Exhibit F.  Thus, it is clear there was probable cause within the four corners of the affidavit to believe that Smith had committed these crimes.  This affidavit merely set forth the additional evidence the government sought in support of the crimes for which probable cause had already been found.

Further, TFO Laielli took great care to describe why the items sought (clothing matching that Smith wore on the day of the arson; a face mask; sneakers; eyeglasses; indicia of residency, to include bills or documents; and electronic devices including cellular telephones and other electronic devices) were relevant to the crimes charged. She details what Smith is wearing on the day of the arson, and that is likely that such items remain in his home or on his person.  *See* Defense Exhibit F, paragraphs 13, 16. Moreover, the government set forth in the affidavit that it sought permission to search and seize Smith's electronic devices for any evidence from the day of the arson, and any evidence regarding motivation, planning, or statements regarding the arson.  Indeed, as the defense brief recognizes, a smart phone is clearly seen in defendant Smith's hand in the photograph accompanying paragraph 12 of the affidavit.  *See* Defense Exhibit F, paragraphs 12, 17-18.  The affidavit further set out that Smith had possession of photographs from May 30, 2020, as seen in posts made on his Instagram account. These posts included a picture of him sitting on car C-109 before it was burned, with the caption "zoomed in to avoid context lol."  *See* Defense Exhibit F, paragraphs 14, 19. Such a statement is clear consciousness of guilt, as the defendant would not need to "zoom in to avoid context" if not attempting to cover up his participation in an arson that day.

Thus, as the fact that Smith had been indicted was set forth in the affidavit, as well as the reasons for why the particular items in the warrant were sought, there was

probable cause set forth in the four corners of the affidavit, the defendant's motion should be denied.

### iii. The "Piggyback" Warrant for materials found during the search of Smith's residence

While searching for the items detailed in the warrant for Smith's residence and person (items authorized to be seized included clothing; a face mask; sneakers; eyeglasses; indicia of residency, to include bills or documents; and electronic devices including cellular telephones and other electronic devices), law enforcement officers discovered items in plain view, in piles of items being searched on the floor of Smith's bedroom, and in a duffle bag on Smith's bedroom floor, that referenced anti-police ideology. As a result, a "piggyback" warrant was sought for these items to determine if any of these items provided any information on Smith's motivation and planning for the crimes for which he was indicted, and any possible coconspirators or accomplices in those crimes. *See* Defense Exhibit H, paragraph 6. Certainly, in searching Smith's bedroom for items authorized by the warrant – including clothing and documents with his name on it – law enforcement officers were authorized to look in these areas.

Again, counsel for Smith attempts to persuade this Court that lawfully possessed materials can never be indictive of motive, planning, or coconspirators. Such an allegation is without basis. If such a statement were true, law enforcement would not be allowed to seize such items as a notebook containing a drug ledger, or materials printed from the internet detailing how to make an explosive device as evidence of a crime. More detail as to what these materials contained was not available because law enforcement properly secured a search warrant for these materials before seizing or

examining them.  In so doing, the previous warrant was included (as Exhibit C) in the probable cause before the reviewing magistrate judge.

Defense counsel has repeatedly and without basis asserted that the prosecution of defendant Smith is based on First Amendment protected activity, and this allegation is a dangerous attempt to excuse the defendant's participation in an arson and distort this crime for this Court and the public.  Three individuals have been charged in Indictment 20-368, yet defense counsel repeatedly contends that the grand jury's indictment as to Smith is motivated by political beliefs.  All three individuals charged were seen in video or in photographs placing combustible material into car C-109.  As set forth in the affidavit for social media accounts, Smith's identity was unknown to the government when he was first identified as contributing to the arson of C-109.  The repeated statements that Smith was targeted are without basis in the record and in fact.  The only person to bring up defendant Smith's activity in various groups is counsel for defendant Smith.  Any protected First Amendment activity is irrelevant to the charges before this court – which concern arson – and the defense's attempt to shift the focus from this is unpersuasive.

Therefore, the affidavit in support of the search and seizure of these items is sufficient within its four corners to establish probable cause.

**B. The good faith exception to the exclusionary rule would apply even if the affidavits of probable cause were lacking.**

Even if the defendant had advanced a substantial argument that the affidavits at issue were flawed, any evidence seized as a result of these warrants should not be suppressed because the warrant falls under the good faith exception to the exclusionary rule.  Even if this Court were to adopt the defendant's incorrect view that the warrants

were lacking in probable cause, the record is clear that all the law enforcement officers involved had good faith that they were acting according to law as established in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court recognized that:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion [. . .] [T]he good faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice. When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.

*Id.* at 922, 924.

The good faith exception to the exclusionary rule instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993); se*e United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Hodge*, 246 F.3d at 307. *See also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002). The Court has identified four narrow situations in which an officer's reliance on a warrant is not reasonable: "(1) when a magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable; or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Id.* 307 F.3d at 146, *quoting Williams* at 74 n.4. None of these are present here.

Here, Smith broadly argues that all derivative evidence seized from these warrants must be suppressed because the affidavits failed to set forth probable cause for the warrants. As discussed above, there is no merit to this claim. Even if this were the case, Supreme Court case law makes clear that suppression is not an automatic consequence of any such putative error. The Supreme Court developed the exclusionary rule to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 897, 905-06 (1984). However, no unlawful law enforcement conduct occurred here and, under the circumstances in this case, it cannot be said that the warrants were so facially deficient that the federal law enforcement officers could not reasonably and in good faith believe that the warrants were valid. The affidavit in support of social media set forth the crime under investigation, how the accounts were tied to various people, and the reasons to believe the social media accounts would have evidence of the crime. The affidavits for the searching of physical items and electronic devices set forth that the defendant had been indicted by a grand jury, and the reasons why additional evidence in support of these crimes was being sought.

Moreover, the two separate United States Magistrate Judges carefully reviewed the warrants and affidavits in support and found that there was probable cause to conduct the searches. Under these circumstances, it was objectively reasonable for the federal law enforcement agents involved to believe that the agents who secured the warrants did so in the appropriate manner and to rely in good faith on the order issued

by the judge. "[I]t must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). *See United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of motion to suppress due to applicability of good faith exception); *United States v. Kepner*, 843 F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in good faith on valid search warrant); *United States v. Wecht*, No Crim. 06-0026, 2006 WL 1669879 (W.D. Pa. Jun. 13, 2006) (denying motion to suppress evidence recovered from physician's office because search team members acted reasonably and in good faith in relying on warrant and affidavit).

Accordingly, all of the federal law enforcement officers in this case acted in good faith, and any evidence recovered pursuant to the warrants should be permitted.

## C. The defendant has not met the standard necessary for a *Franks* hearing.

A defendant is entitled to a *Franks* hearing only if he can make a "substantial preliminary showing" that: (1) the affidavit in support of the warrant was deliberately false or demonstrated reckless disregard for the truth; and (2) any challenged statement or omission was essential to the magistrate's finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also United States v. Calisto*, 838 F.2d 711, 714-16 (3d Cir. 1988).

On the first *Franks* prong, it is not enough for the defendant to show that there was an error in the affidavit. A defendant must allege perjury or reckless disregard for the truth <u>and</u> provide accompanying offers of proof. *Franks*, 438 U.S. at 155-56. "In

order to make a preliminary showing with respect to the first prong of the *Franks* test, a defendant must challenge the affiant's state of mind as well as the truth of the affidavit." *United States v. Brown*, 3 F.3d 673, 676-78 (3d Cir. 1993). A challenge to the contents of a warrant affidavit goes to "the integrity of the affiant's representations as to his own activities." *Franks*, 438 U.S. at 169. If a defendant cannot demonstrate that an affiant had reason to believe that certain information in an affidavit was false, there is no Fourth Amendment violation. *Id*. at 171 n.8. The defendant has not met this standard.

The Third Circuit has extended the *Franks* analysis to omissions as well as misstatements. *See Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *United States v. Frost*, 999 F.2d 737, 743 n.2 (3d Cir. 1993) (collecting cases). In *Wilson*, the Third Circuit explained that omissions are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 788 (citation omitted). However, "[a]ll storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant." *Id*. at 787.

Here, Agent Jenkins and TFO Laielli did not misrepresent any facts, and did not fail to state facts that a judge would wish to know. The defense alleges a Franks hearing is necessary because of a "failure to set forth the chronology of events and describe precise actions of the person identified as Anthony Smith." *See* Motion to Suppress, paragraph 65. However, this allegation is not supported and should be dismissed. The affidavits at issue all clearly state that a road flare was placed in the vehicle, and that it is unknown to the government who placed that lighted flare in the vehicle. Smith is described only as placing combustible items into the car – which evidence shows that he

did.  It is not merely the person who lights the match (or in this case, the road flare) who is guilty of arson.  Indeed, as set forth above in footnote 5, even individuals not present for an arson have been convicted of aiding and abetting it.   Moreover, a Tenth Circuit case upheld a conviction of arson under an aiding and abetting theory where the government did not allege one specific actor was responsible for the arson:

> The Yosts concede that all of the substantive elements of the crime of arson under § 844(i) were present. Though there is no specific allegation of who besides Mr. Yost might have physically committed the arson, if Mr. Yost did not himself do it, it is undisputed that *someone* did. All that is required for a conviction based on 18 U.S.C. § 2 is a finding that Mr. Yost aided *someone* in committing the crime. *See Langston,* 970 F.2d at 705; *Martin,* 747 F.2d at 1407. There is ample evidence from which a reasonable jury could have concluded that such was the case here. The aiding and abetting instruction to the jury was proper.

*United States v. Yost*, 24 F.3d 99, 104 (10th Cir. 1994).  Similarly, the Fourth Circuit has upheld the conviction of 844(i) based purely on circumstantial evidence, including motive.  *See United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008), citing *United States v. Lundy,* 809 F.2d 392, 396 (7th Cir.1987); *United States v. Schnapp,* 322 F.3d 564, 572-73 (8th Cir.2003).

Here there is substantial evidence of the defendant's actions in contributing to the arson of car C-109.  In one video (bates 727, video 3) he is seen approaching the vehicle and throwing what appears to be paper or cardboard into it.  In the other video, not cited by defense counsel in his brief in support of these motions to suppress (bates 1288), which has an overhead camera view, car C-109 is seen before it is engulfed in flames.  In this video, several people are seen approaching the car, including defendant Smith.  Smith is seen approaching the upside-down car not once, but twice, to insert combustible materials into the vehicle.  Smith is easily identifiable as the video zooms in due to his appearance, including a light-colored shirt and a face covering that is square

in shape with strings hanging down when untied that can be seen in the video. The first time Smith is seen approaching, there is a small amount of smoke coming out of an open car door on the opposite side from where Smith approaches. Smith then approaches the car, hesitates, then places an item appearing to be paper directly into the car. He is seen walking away from the car, then walking towards discarded cardboard / paper (which law enforcement properly refers to as "kindling" in the affidavits) on the street, picking it up, and returning to the car to place it in the car as the smoke coming from the car grows. He then picks up an identified item from the ground and places it into the vehicle.

As set forth above, the chronology as known to law enforcement and actions of Smith are set forth accurately in the affidavits. There is no evidence of any false or reckless statement or omission.

Finally, even if this Court were to find that Agent Jenkins or TFO Laielli made false statements and omissions either intentionally or with reckless disregard for the truth, the defendant's argument would fail on the second prong of the *Franks* analysis as these statements and omissions are not "material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 792. Here, the affidavit of probable cause is not materially altered even if descriptions on when the car was "engulfed" in flames is added.

Thus, the defense can not satisfy either *Franks* prong, and the motion for a hearing is without basis and should be denied.

### III. CONCLUSION

For the reasons set forth above, the government respectfully requests that this

Court deny defendant's motion to the search warrants relating to Anthony Smith.


Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s Amanda R. Reinitz*
AMANDA R. REINITZ
Assistant United States Attorney


Dated: September 10, 2021